WILSON COAL CO. v. UNITED STATES et al. (2 cases).

(Circuit Court of Appeals, Ninth Circuit. July 3, 1911.)

Nos. 1,935, 1,936.

1. PUBLIC LANDS (§ 120*)—SUIT BY UNITED STATES FOR CANCELLATION OF PATENTS—FRAUDULENT ENTRY OF COAL LANDS.

Where a number of persons joined in a conspiracy to obtain title for the benefit of themselves as an association to public coal lands in excess of the quantity allowed by law, by means of individual entries, and united with others in forming a corporation to which it was agreed the title should be conveyed by the entrymen when obtained from the government, the transaction was not purged of its fraudulent character by the fact that, after using the funds of the corporation to pay for the lands, the entrymen repudiated the agreement and retained the title in themselves, and the United States may maintain a suit to cancel the patents for such lands.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

2. PUBLIC LANDS (§ 120*)—SUIT BY UNITED STATES FOR CANCELLATION OF PATENTS—DEFENSES—BONA FIDE PURCHASER.

Where one who has notice of the infirmity of his own title to land obtained from the government unites with others to form a corporation and subscribes for nearly all of the stock, conveying the land in payment of his subscription, the corporation is affected with notice of the circumstances impairing the title and cannot claim protection against a suit for cancellation of the patents as a bona fide purchaser without notice.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*

Bona fide purchasers of public lands, see note to United States v. Detroit Timber & Lumber Co., 67 C. C. A. 13.]

3. PUBLIC LANDS (§ 120*)—SUIT BY UNITED STATES FOR CANCELLATION OF PATENTS—DEFENSES BY CORPORATION.

A corporation, which has taken land obtained by entry from the United States with notice of fraud in its acquisition, cannot defend a suit by the government for cancellation of the patents by showing that stockholders purchased its stock in good faith and in ignorance of the defect in the title to the land.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Suit in equity by the United States against the Wilson Coal Company, Watson Allen and Jane Doe Allen, his wife, Helen Pack Wilson, and the Sterling Coal Company. Same against the Wilson Coal Company, Watson Allen and Jane Doe Allen, his wife, Minn Marie Wilson, Virgil R. Wilson and Malvina Benton Wilson, his wife, Helen Pack Wilson, Sterling Coal Company, and Medardo Garcia and Charles McGinni. Decrees for complainant, and defendant Wilson Coal Company brings error. Affirmed.

In February, 1905, the United States brought two suits for the purpose of setting aside and canceling two patents for coal lands, one issued to Helen Pack Wilson and the other two to Virgil R. Wilson. The facts in the case, as stipulated by the parties to the appeal, are substantially the following: In February and March, 1901, filings were made by Helen Pack Wilson, Katie Roberts Wilson, Minn Marie Wilson, James R. Winston, and Solomon Lauridsen on certain public coal lands situate in Lewis county, Wash. In making their declaratory statements and in doing the assessment work on said lands,

these persons acted in concert for the purpose of acquiring for themselves as an association 1,040 acres of said coal lands. R. A. Wilson was the author of the scheme. Helen Pack Wilson and Minn Marie Wilson were his daughters. Neither R. A. Wilson nor any of his associates had sufficient means to make payment for the land at the Land Office, or to provide for the development work. For that purpose, R. A. Wilson induced P. C. Richardson to advance $8,300 and organized a company, known as the Sterling Coal Company, in which the title of the coal lands was to vest after issuance of the patents therefor. Helen Pack Wilson and her father defrauded the Sterling Coal Company of all the money in the treasury, and with $3,200 thereof Helen Pack Wilson paid for her coal claim, and the deed which she had previous to her entry executed and delivered conveying the land to the Sterling Coal Company, afterwards coming into her possession, was destroyed. Virgil Wilson was to make an entry on the southwest quarter of section 10, and turn the same over to the Sterling Coal Company or to R. A. Wilson and his associates for a consideration of $500. His claim was paid for by $3,200 of money which had been so placed in the treasury of the Sterling Coal Company. and on the day of making his final proof he deeded the property to Minn Marie Wilson. In the meantime the officers of the Sterling Coal Company endeavored to recover the money that had been thus diverted from the treasury, and brought a civil action for that purpose. Patent was issued to Helen Pack Wilson on June 26, 1903, and a patent was issued to Virgil R. Wilson on September 26, 1902. Neither of the patentees ever conveyed to the Sterling Coal Company the title so acquired. On September 15, 1903, the Sterling Coal Company brought a suit in equity against the patentees and the holders thereunder, to obtain a conveyance of the lands to the Sterling Coal Company; but the bill was dismissed for want of equity on the ground that the plaintiff was party to a fraudulent scheme to obtain land of the United States. The title which Virgil R. Wilson conveyed to Minn Marie Wilson thereafter was conveyed to Helen Pack Wilson so that early in the year 1904 title to both claims was vested in her. Upon the issues and the testimony the court found that the patents were obtained as the result of fraudulent conspiracy made and carried out with the intent to evade the provisions of the statutes of the United States and to obtain title to coal lands contrary to law, and ordered that the patents be canceled and set aside.

J. B. Bridges, James B. Murphy, Theo. B. Bruener, and Murphy & Winders, for plaintiff in error.

Elmer E. Todd, U. S. Atty., and W. G. McLaren, Asst. U. S. Atty.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] It is contended that the evidence in the case contains no proof of fraud against the government by either Helen Pack Wilson or Virgil R. Wilson; that, although these persons were involved in the unlawful conspiracy and entered into the scheme to obtain these lands in violation of the law, yet at the last moment they abandoned the scheme, repudiated their co-conspirators, and entered the land and paid for the same for their own use and benefit. And it is urged that, at the time when this was done, there is no evidence that the entrymen were actuated by unlawful motives, and that the government was not defrauded inasmuch as the entries were not made for the use and benefit of the Sterling Coal Company, but solely for the use and benefit of the entrymen. The bill alleges, and the evidence proves, a conspiracy to obtain for an association coal lands in excess of the amount permitted by law, an agreement between all the entrymen on the one part, and R. A. Wilson and George D. Wilson on the other, whereby the

latter were to have an interest in the lands when acquired and the right to require that all the lands or an interest therein be conveyed to such person or corporation as might be induced to furnish the purchase price therefor. In carrying out this unlawful agreement, Virgil Wilson promptly conveyed his land to Minn Marie Wilson. The stipulation as to the facts contains the following:

"These several persons in making their declaratory statements and in doing the assessment work in said lands all acted in concert for the purpose of acquiring for themselves as an association said 1,040 acres of coal lands, and R. A. Wilson was their joint representative and the author of the scheme to acquire these coal lands."

The scheme thus admittedly had its inception in fraud. At what point in the proceedings was the transaction purged of the fraud? It was not purged of fraud by the fact that the Sterling Coal Company was unable to recover from the entrymen money which the latter had fraudulently diverted for the purchase of the lands, nor was it relieved of its fraudulent character by the fact that the government received for the lands the purchase price at which all coal lands are offered for sale. The government does not offer its coal lands for the purpose of selling them for money, but for the purpose of administering a trust, and carrying out its policy for the benefit of its citizens. The restrictions in the statutes which provide for the sale of the coal lands of the United States are for the purpose of preventing monopolies in such lands. Undoubtedly those who acquire coal lands in pursuance of the statute and obtain patents therefor are at liberty thereafter to dispose of the same as they may see fit. But in the present case it is clear that the lands were not obtained in compliance with the statutes. United States v. Trinidad Coal Company, 137 U. S. 160, 11 Sup. Ct. 57, 34 L. Ed. 640; United States v. Keitel, 211 U. S. 370, 20 Sup. Ct. 123, 53 L. Ed. 230.

[2] It is earnestly contended that the title of the Wilson Coal Company should be protected as that of an innocent purchaser for value without notice. In August, 1904, one Kirkpatrick, with a view to investing in the lands, obtained from Helen Pack Wilson and Minn Marie Wilson an option, whereby it was provided that, upon his forming a corporation to take over the lands and obtaining bona fide subscriptions of stock of a certain amount thereto, the owners of the lands would convey the same to the corporation and receive certain amounts of capital stock in payment therefor. Kirkpatrick organized the corporation on September 21, 1904. The capital stock was $65,000, consisting of 6,500 shares. Helen Pack Wilson subscribed for all the stock except four shares. She transferred the coal lands to the corporation for a stated consideration of $64,960, and thereby paid her stock subscription. She was one of the incorporators of the company. She placed 2,500 shares of the capital stock in the treasury, to be the property of the corporation, and to be used to raise money to develop the mines and carry on the coal business. The stock book was not offered in evidence; but there was testimony to show that before the commencement of the suit one subscriber to stock paid $1,000 for 100 shares, and another subscribed to 50 shares, for which he was to pay in work for the company, and that thereafter 200 shares were issued

in part payment for a road which was constructed for the company. But, at the time when the suit was brought, Helen Pack Wilson was the holder of more than nine-tenths of the stock. It has been held that where one who has notice of the infirmity of his own title to land unites with others to form a corporation to which he subscribes for nearly all of the stock, and to which corporation he conveys the land in payment of his subscription to stock, the corporation is affected with notice of the circumstances impairing the title, and cannot claim to be a bona fide purchaser without notice. 10 Cyc. 1059; Hoffman Steam Coal Co. v. Cumberland Coal Co., 16 Md. 456, 77 Am. Dec. 311; Simmons Creek Coal Company v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; California Consol. Min. Co. v. Manley, 10 Idaho, 786, 81 Pac. 50; McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590.

In Simmons Creek Coal Company v. Doran, where the incorporators subscribed to the stock, and through the incorporators the company claimed title, the record disclosing that one of them became its president, the court said:

"Associated together to carry forward a common enterprise, the knowledge or actual notice of all these corporators and the president was the knowledge or notice of the company, and, if constructive notice bound them, it bound the company."

Helen Pack Wilson, as we have seen, subscribed to all of the capital stock of the appellant company, leaving only four shares to be held by others in order to qualify them to act as directors, and she paid for her subscription by conveying the real estate. Kirkpatrick, who was an active promotor of the corporation, and who subsequently furnished money therefor and became a stockholder, had, before the corporation was formed and before investing money therein, actual notice of the suit of the Sterling Coal Company, and knew the ground on which that company sought the recovery of the land. He was also informed by Richardson, who had furnished the money which had been used for the purchase of the lands, of his claim of right in the premises. These facts, which came to his notice before he invested his money in the lands or in the corporation, were sufficient to put him upon notice to ascertain the nature and the disposition of the Sterling Company's suit. Had he pursued the inquiry, he would have learned that the suit was dismissed on the ground that the coal lands had been obtained as the result of a conspiracy to defraud the United States. Those who subscribed to the stock of the new corporation and paid for the same must be held to stand in no better position than the persons through whose original subscription their stock was subsequently acquired. Cases are cited which hold that knowledge possessed by an officer of a corporation who is selling property to the corporation is not imputed to the corporation itself; but they are cases where the officer does not act as the agent of the corporation in making the sale, but where the corporation is represented by others. Shareholders are not co-owners of the property in any sense. The title to the property rests in the legal entity called the corporation.

[3] It has never been held, so far as we know, and we think it not sustainable on principle, that a corporation which has taken property with notice of defects of title can defend an action to recover it by showing that its stockholders subscribed to or purchased their stock in good faith and in ignorance of the defect.

The decree is affirmed.