HEDDERLY et al. v. UNITED STATES.†

(Circuit Court of Appeals, Ninth Circuit. February 5, 1912.)

No. 1,824.

**1.** INDICTMENT AND INFORMATION (§ 148*)—DEMURRER—QUESTIONS RAISED.

A demurrer to an indictment charging a conspiracy to defraud the United States of public lands, which is directed specifically to the allegations in the indictment, charging overt acts, and which avers that the indictment properly alleging an unlawful conspiracy does not properly charge overt acts to effect the objects of the conspiracy, does not challenge the sufficiency of the indictment so far as it alleges a conspiracy.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 495; Dec. Dig. § 148.*]

**2.** CRIMINAL LAW (§ 1167*)—HARMLESS ERROR—RULINGS ON INDICTMENT.

Under Rev. St. § 1025 (U. S. Comp. St. 1901, p. 720), providing that no indictment shall be insufficient by reason of defects not tending to prejudice accused, an objection to an indictment is not available to accused, convicted thereunder, unless his substantial rights have been prejudiced by the court's refusal to require a more detailed statement of the means employed in committing the offense charged.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1167.*]

**3.** CONSPIRACY (§ 43*)—CRIMINAL RESPONSIBILITY—CONSPIRACY TO DEFRAUD GOVERNMENT—INDICTMENT—SUFFICIENCY.

An indictment charging a violation of Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), providing that where two or more persons conspire to defraud the United States for any purpose, and one or more of them do any act to effect the conspiracy, all shall be liable, which alleges that defendants conspired to defraud the United States of public lands, and which avers that the conspiracy was to be carried out by means of false, fraudulent, and fictitious entries to the lands, sufficiently charges conspiracy, within the rule that, where the criminality of a conspiracy consists in an unlawful agreement to promote a criminal purpose, the purpose must be stated in the indictment, and that, where the criminality consists in an agreement to accomplish a purpose not in itself criminal, the criminal means must be set out, since false and fictitious entries of the public lands are unlawful, and since entries are false when the object is to obtain public lands by suppressing facts which, if disclosed, would render their acquisition impossible.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

**4.** CRIMINAL LAW (§ 662*)—RECEPTION OF EVIDENCE—RIGHT TO CONFRONT WITNESS.

Where a defendant stipulated that the testimony of a codefendant in removal proceedings could be received to impeach codefendant, who had been examined and cross-examined on the trial, and such testimony was received for such purpose only, defendant was not deprived of the constitutional right to be confronted with witnesses against him.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1538–1548; Dec. Dig. § 662.*]

**5.** CRIMINAL LAW (§ 150*)—LIMITATIONS—CONSPIRACY.

Where a conspiracy to defraud the United States of its public lands contemplated various overt acts, and such acts extended down to a designated date, a prosecution begun within three years of the last

overt act was not barred by the three-year statute of limitations (Rev. St. § 1044 [U. S. Comp. St. 1901, p. 725]).

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 274, 275; Dec. Dig. § 150.*]

6. CONSPIRACY (§ 45*)—EVIDENCE—ADMISSIBILITY.

The prosecution on a trial for a conspiracy to defraud the government of its public lands may show by entrymen that it was their understanding that the lands entered on should be turned over to the conspirators, and that they were not taking claims in their own interest.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 100–104: Dec. Dig. § 45.*]

7. CRIMINAL LAW (§ 753*)—EVIDENCE—SUFFICIENCY—QUESTION FOR COURT.

Denial of a motion by accused at the close of the evidence of the prosecution for a directed verdict of not guilty leaves open to the court the right to consider whether there is any evidence to sustain a verdict of conviction, though not to pass on its weight or sufficiency.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1727; Dec. Dig. § 753.*]

8. CRIMINAL LAW (§§ 935, 1156*)—NEW TRIAL—DISCRETION OF TRIAL COURT.

The granting or refusal of a new trial on the ground of the insufficiency of the evidence to support a conviction rests in the discretion of the trial court, and is not reviewable on writ of error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2297, 3068; Dec. Dig. §§ 935, 1156.*]

9. CONSPIRACY (§ 41*)—CRIMINAL RESPONSIBILITY—EVIDENCE—SUFFICIENCY.

One who becomes aware of the fraudulent character of the business in which he and his associates are engaged in obtaining title to public lands to defraud the United States, and who does not withdraw from the business or repudiate the acts of his associates actively participating in overt acts to obtain title to public lands, may be convicted of a conspiracy to defraud the United States of its public lands.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 74; Dec. Dig. § 41.*]

10. CRIMINAL LAW (§ 1159*)—VERDICT—REVIEW.

The weight of the evidence and the extent to which it is contradicted or explained by witnesses of accused are questions exclusively for the jury, and not reviewable on writ of error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074–3083; Dec. Dig. § 1159.*]

In Error to the District Court of the United States for the District of Oregon.

A. H. Hedderly and others were convicted of a conspiracy to defraud the United States, and they bring error. Affirmed.

Criminal prosecution by the United States upon an indictment charging a number of persons with the crime of conspiracy to defraud the United States of the possession, use, and title to large tracts of the public lands belonging to the United States. Upon this indictment A. H. Hedderly, Richard Hynes, and William H. Smith were tried and convicted, and bring error. The indictment was found under section 5440 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3676), and charged that on or about the 18th day of April, 1902, Richard D. Jones, William H. Smith, Jacob C. Cross, David M. Goodwin, Will D. Gould, Frank A. Stewart, William T. Kerr, John R. Miller, Fred W. Dennis, Richard Hynes, M. M. Riley, Lee R. Myers, George L. Stearns, Jeremiah Huntley, Ames S. Johnston, Warren Gillelen, R. W. Kenny, and A. H. Hedderly conspired, combined, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

confederated together to defraud the United States of the possession, use, and title of certain public lands in the district and state of Oregon. To this indictment Frank A. Stewart, William T. Kerr, John R. Miller, and Ames S. Johnston appeared and pleaded guilty. The indictment was dismissed as to Jacob C. Cross, George L. Stearns, Warren Gillelen, and R. W. Kenny. It is stated that Richard D. Jones and David M. Goodwin died before trial, and that Fred W. Dennis and M. M. Riley were never apprehended. Upon the trial Lee R. Myers and Jeremiah Huntley were acquitted, and the plaintiffs in error William H. Smith, Richard Hynes, and A. H. Hedderly were convicted. William H. Smith was sentenced to pay a fine of $5,000 and be imprisoned for a period of two years. Richard Hynes was sentenced to pay a fine of $2,000, and be imprisoned for a period of 90 days. A. H. Hedderly was sentenced to pay a fine of $5,000, and be imprisoned for a period of six months. All three defendants were ordered committed until sentence served and fine paid or be discharged according to law.

Manning & White, Wm. D. Fenton, James E. Fenton, M. C. McLemore, and Albert H. Elliot, for plaintiff in error Smith.

Herbert J. Goudge, Le Compte Davis, M. C. McLemore, and Albert H. Elliot, for plaintiffs in error Hedderly and Hynes.

Tracy C. Becker, U. S. Sp. Asst. Atty. Gen.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The indictment in this case is voluminous, and purports to contain 13 counts, but there is only one charge of conspiracy under and in pursuance of which it is alleged in separate subdivisions or counts of the indictment that certain overt acts were committed in carrying out and accomplishing the object and design of the conspiracy. The court below so construed the indictment and instructed the jury that the indictment charged but one offense, namely, that of the conspiracy to defraud the government of certain of its public lands, and that the joining of the several counts was designed to put in the indictment the averment of many acts which it was alleged were done to effect the purpose of the conspiracy.

The court held that the allegations in the indictment charging overt acts and designated as counts two and six did not constitute overt acts, and that the allegation in the indictment charging an overt act and designated as the eighth count had not been proven. These counts were accordingly withdrawn from the consideration of the jury as charging overt acts, but the proof as to the allegations contained in the second and sixth counts was left as evidence in the case. The verdict of the jury was general, finding the defendants guilty as charged in the indictment. The sentence of the court in each case was less than the maximum penalty provided in section 5440 of the Revised Statutes for a single offense. That section provides:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

[1] The first specification of error to be considered is that urged on behalf of the plaintiff in error William H. Smith. It is assigned as error that the indictment does not state facts sufficient to constitute an offense against the laws of the United States.

In the court below plaintiff in error interposed a demurrer to the indictment, in which objections were directed specifically to the allegations charging overt acts as set forth in what is termed the separate counts of the indictment. It was objected, for example, to the first, third, fourth, fifth, sixth, seventh, and eighth counts that more than one offense was charged in each count. It was also objected to each of the 13 counts that it was not sufficient, in this: That it did not set out or allege an overt act on the part of the defendants, or either of them, by which the object of the alleged conspiracy might be effected. There were also other specific objections to the separate counts which need not be repeated here. The demurrer concluded with this general objection:

"And defendants say that the indictment as a whole alleges no facts nor acts which would constitute a violation of the laws of the United States. That it alleges a conspiracy was formed by the defendants to defraud the United States of its lands by means of false, fraudulent, feigned, untrue, illegal, and fictitious entries of, to, for, and on certain lands of the United States subject to entry, but said indictment in no count alleges or sets up any entry by any one of the defendants or by any one thereunto induced or procured in substantiation of such allegation; that the indictment as a whole is insufficient and indefinite to such extent that the defendants are not advised thereby of the nature of the charges against them, so that they might properly prepare and submit defenses thereto."

That the objections contained in the demurrer were directed against the allegations charging overt acts is shown by the objection set forth in the demurrer against the first count as follows:

"That such counts should be quashed for the reason that more than one offense is set out and alleged in the same, in this: that an unlawful conspiracy having been properly alleged, it is charged that as an overt act performed for the purpose of effecting the objects of such conspiracy that the defendants induced and persuaded one Eugene L. Bogy to knowingly, willfully, and corruptly make a false and fraudulent timber entry and stone land sworn statement on April 29, 1903, and that said Bogy did on that day sign and subscribe a certain paper called 'Timber and Stone Land Sworn Statement.' In the same count, and as a further, different, and separate overt act on the part of the defendants and as a separate and distinct offense, it is alleged that the defendants caused and procured one Chas. Steele to sign and subscribe a certain paper called 'Timber and Stone Land Sworn Statement'; and as a further and separate overt act committed by these defendants for the purpose of effecting the object of the alleged conspiracy, and as a separate and distinct offense, it is charged that they procured and caused one Mary C. Lewis on May 5, 1903, to sign and subscribe a timber and stone land sworn statement. That said count so charging three separate and distinct alleged offenses is duplicitous, and should be dismissed."

It will be observed that this objection contains the specific statement that, "an unlawful conspiracy having been properly alleged," the objection is then made that more than one offense (overt act) is alleged in the same count. There was no objection to the sufficiency of the allegations charging a conspiracy, but the objection was to that

part of the indictment charging overt acts alleged to have been committed in carrying the conspiracy into effect.

After verdict and before sentence, each of the defendants moved the court for a new trial on the ground that the verdict was contrary to law, and not supported in any way by the evidence introduced in the cause, but no objection was made that the indictment was insufficient. This motion having been denied, each of the defendants moved the court in arrest of judgment upon grounds relating to the proceedings in court, but again no objection was made that the indictment was insufficient.

[2] The objection that the charge of conspiracy is not sufficiently alleged is therefore made for the first time in this court; but, even if it be held that the demurrer did include such an objection, it will not avail the plaintiff in error, unless it appears that the substantial rights of the accused have been prejudiced by the refusal of the court to require a more specific and detailed statement of the particular means or mode employed in committing the offense. U. S. Rev. Stat. § 1025 (U. S. Comp. St. 1901, p. 720); Connors v. United States, 158 U. S. 408, 410, 15 Sup. Ct. 951, 39 L. Ed. 1033; Armour Packing Co. v. United States, 209 U. S. 56, 88, 28 Sup. Ct. 428, 52 L. Ed. 681. In the present case it appears from the record that the defendants were fully advised of and understood the precise facts charged against them, and which were alleged to be in violation of the statute, and it does not appear that the substantial rights of the defendants were prejudiced in any way by the alleged lack of definiteness or certainty or the sufficiency of the facts charged in the indictment.

But it is not necessary to sustain the sufficiency of the indictment upon the ground of the insufficiency of the demurrer or the lack of proper proceedings in bringing the alleged insufficiency of the indictment properly to the attention of the court. We prefer to consider the question upon its merits, upon the assumption that the demurrer to the indictment contained all the objections now urged against it.

[3] It is now contended that the conspiracy charged in the indictment is not sufficiently alleged; that it is not sufficient to charge generally that defendants conspired and agreed together to defraud the United States out of the lands described in the indictment; that the criminality of the offense consists in the agreement to accomplish a purpose, not in itself criminal or unlawful, but by criminal and unlawful means, and in such case the law requires that the unlawful means must be clearly and distinctly set forth; that the offense does not consist of both the conspiracy and the acts done to carry out and effect the object of the conspiracy, but the conspiracy alone; and that the conspiracy must be sufficiently charged in and of itself, and cannot be aided by the allegations of acts done by one or more of the conspirators in the furtherance of the object of the conspiracy. The argument of counsel in support of the general objection is elaborate, and numerous authorities are cited as establishing such a rule, which may at once be conceded as the rule. The question is, Does the rule apply to the sufficiency of the indictment in this case? We think it does

not, and this conclusion is fully confirmed by a consideration of the leading case of Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419, cited by the plaintiff in error. In that case the defendants had been convicted of a conspiracy corruptly and by threats and force to obstruct the due administration of justice in a Circuit Court of the United States for the District of Idaho. The due administration of justice which the defendants were charged with having obstructed was an injunction issued by the court commanding that the defendants be restrained and enjoined from in any way interfering with a mining company in any of its work in and upon or about its mining claims, or in any manner, by force or threats or otherwise making any attempts to intimidate any employé of the company, or from attempting to prevent by any force or intimidation any employé of the company from proceeding to work or working for the company in a peaceful, quiet, and lawful manner, and from preventing any one from entering the service of the company, or in any unlawful manner interfering with the business of said company in employing persons to work upon said property. The indictment did not charge that the defendants were ever served with process or otherwise brought into court, or that they were ever in any manner notified of the issuance of the writ of injunction, or of the pendency of any proceedings in the Circuit Court; nor was it charged that it was the purpose of the conspiracy to violate the injunction, or to impede or obstruct the due administration of justice in said court. The charge was that while the injunction was in force the defendants had conspired, combined, confederated, and agreed together to commit an offense against the United States, to wit, to intimidate by force and threats of violence the employés of the company then working in and upon the mines of the company with the intent to compel the employés of the company to abandon their work, and by means of force and threats and violence to compel the officers and agents of the company to discharge and dismiss from the employ of the company all employés other than such persons as were members of the so-called Miner's Union.

It appears that such a conspiracy was in violation of the laws of the state of Idaho, but not in violation of any law of the United States, and it was contended that, while the intent on the part of the defendants to violate the injunction was not to be found in the intent to violate any law of the United States, it was to be found in the intent to commit an unlawful act in the doing of which justice was in fact obstructed in a United States court, and that the intent to proceed in the obstruction of justice was supplied by a fiction of law which would transfer the intent to violate a state law to the violation of a writ of a United States court of which, however, they knew nothing. The court said:

"The combination to commit an offense against the United States was averred to consist in a conspiracy against the state and the completed act to have been in pursuance of such conspiracy; but the pleader carefully avoided the direct averment that the purpose of the confederation was the interruption of the course of justice in the United States court."

The court said further:

"The unlawful act which the defendants are charged with conspiring to commit was not an offense against the United States, so that, if the defendants were held guilty of a conspiracy to violate the injunction or interfere with proceedings about which they knew nothing, such conviction would have to rest upon a conspiracy to commit an act unlawful in another jurisdiction, and in itself a separate and distinct offense therein."

The court concluded its opinion with this observation:

"And neither the indictment nor the case can be helped out by reference to the alleged crime against the state and the defendants be punished for the latter under the guise of a proceeding to punish them for an offense which they did not commit."

Upon the facts thus stated, the Chief Justice declared the rule to be that:

"A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means, and the rule is accepted, as laid down by Chief Justice Shaw, in Commonwealth v. Hunt, 4 Metc. (Mass.) 111, 38 Am. Dec. 346, that, when the criminality of a conspiracy consists in an unlawful agreement of two or more persons to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment; while, if the criminality of the offense consists in the agreement to accomplish a purpose not in itself criminal or unlawful, by criminal or unlawful means, the means must be set out."

The rule as thus declared and applied in that case does not determine that the charge of conspiracy alleged in the indictment in the present case is insufficient; on the contrary, by the process of exclusion applied to a charge that is declared to be insufficient, we proceed to find what is sufficient. The charge in the present case is that the defendants conspired together to defraud the United States out of certain of its public lands. That charge is an offense against the United States and made so by section 5440 of the Revised Statutes, under which the defendants were indicted. The section provides:

"If two or more persons conspire * * * to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable," etc.

We do not have to look elsewhere for a law making it an offense to defraud the United States in order to have the basis upon which to found the charge of conspiracy to defraud the United States, since we have here the entire offense described and made unlawful. The conspiracy was to accomplish the purpose of defrauding the United States made unlawful by the statute. This brings the charge in the indictment within the first clause of the opinion of the Chief Justice in the paragraph quoted:

"A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose."

In the case of the State v. Mayberry, 48 Me. 235, also cited by the defendants as an authority in support of their contention, the charge

was a conspiracy to cheat and defraud under and by means of certain false and fraudulent pretenses concerning the ownership of land. The indictment was found under a statute providing that, if two or more persons conspire together to commit any crime punishable by imprisonment in the state prison, they shall be deemed guilty of a conspiracy. To cheat and defraud was not an offense at common law, and the court held that:

"When the act to be accomplished is itself criminal or unlawful, it is not necessary to set out in the indictment the means by which it is to be accomplished, but, when the act is not in itself criminal or unlawful, the unlawful means by which it is to be accomplished must be distinctly set out."

The indictment did not come under the first clause of the rule, since the act to be accomplished was not in itself criminal or unlawful, or made so by the conspiracy statute, but the court held that the indictment was sufficient under the second clause of the rule because the indictment alleged that the pretenses by which the conspiracy was to be accomplished were charged in the indictment to have been false and fraudulent, and made for the purpose of cheating and defrauding the person against whom the conspiracy was directed. In other words, the act of cheating and defrauding by false and fraudulent pretenses became a crime when committed by an unlawful conspiracy, and the indictment was sufficient when it was so charged. Under this rule, the present indictment is sufficient under whatever aspect it may be considered, since it is distinctly alleged and charged in the indictment that the conspiracy to defraud the United States out of certain of its lands "was to be carried out and accomplished and effected by means of false, fraudulent, feigned, untrue, illegal and fictitious entries to, for, and upon the aforesaid lands of the said United States." If anything has been clearly and distinctly established in the land laws of the United States, it is that false, fraudulent, and fictitious entries of the public lands are unlawful. Dealy v. United States, 152 U. S. 539, 545, 14 Sup. Ct. 680, 38 L. Ed. 545; Wilson Coal Co. v. United States, 188 Fed. 545, 547, 110 C. C. A. 343. And entries are false and fraudulent when the object is to obtain lands of the United States by the suppression of facts which, had they been disclosed, would have rendered their acquisition impossible. United States v. Keitel, 211 U. S. 370, 395, 29 Sup. Ct. 123, 53 L. Ed. 230; Perrin v. United States, 169 Fed. 17, 22, 94 C. C. A. 385. The other cases cited by the plaintiff in error are substantially in line with the two cases referred to, and need not be discussed.

[4] It is next contended by the plaintiff in error Smith that the court erred in permitting the testimony of the defendant Hedderly, taken in removal proceedings in this case in Los Angeles, to be considered as read in the case. It appears that the defendant Hedderly was a witness in his own behalf upon the trial of the case, and upon cross-examination he was asked concerning statements he had previously made when sworn as a witness on behalf of certain other defendants in the removal proceedings in Los Angeles. He was re-examined by his own counsel as to some of these statements, and the

defendants rested their case. Counsel for the United States then asked if there would be any objection to the testimony of Hedderly and the whole of it as taken in Los Angeles being considered as read, so that it could be referred to. Counsel for the defendants, including Smith, replied: "Not at all; so far as impeachment is concerned; as a matter of impeachment only." So far as appears from the record, it was not used for any other purpose. The admission of the testimony was by stipulation of counsel after the witness Hedderly had been upon the stand and examined and cross-examined with respect thereto. We do not find in the record anything indicating that the rights of the plaintiff in error Smith were in any way prejudiced by this testimony, or that by its admission he was deprived of the constitutional right "to be confronted with the witnesses against him." He was confronted by the witness Hedderly when the latter was on the stand, and he was examined and cross-examined with respect to his former testimony.

[5] It is assigned as error by the plaintiff in error Smith that the court erred in rendering the judgment against the defendants for the reason that it appeared from the evidence that the prosecution was barred by the limitation of three years provided in section 1044 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 725). The indictment was filed April 9, 1906. It alleges in the first count "that heretofore and preceding the finding of this indictment, and some time in the year of our Lord 1901, and from thence down to and inclusive of the 26th day of August, 1904," certain of the defendants whose names are given "were engaged in the business of locating and obtaining timber lands of the United States in the Roseburg Land District in the district and state of Oregon in the manner hereinafter set forth for their own profit, gain, use, and benefit." The manner thereinafter set forth is the charge of a continuous conspiracy, including the commission of overt acts extending down to August 26, 1904. The evidence adduced upon the trial conforms to these dates. The rule with respect to the application of the statute of limitations to such a conspiracy was stated by this court in Jones v. United States, 162 Fed. 417, 425, 89 C. C. A. 303, and was followed in the Eighth Circuit in Lonabaugh v. United States, 179 Fed. 476, 103 C. C. A. 56. In both of these cases it was held that, where the conspiracy contemplates various overt acts and the consequent continuance of the conspiracy beyond the commission of the first act, each overt act thereafter gives a new, separate, and distinct effect to the conspiracy, and constitutes another agreement, so that a prosecution is not barred by the statute of limitations until three years after the commission of the last overt act alleged and proved. This rule was followed by the Supreme Court of the United States in United States v. Kissel, 218 U. S. 601, 31 Sup. Ct. 124, 54 L. Ed. 1168, and under this rule the statute of limitation had not run with respect to the offense charged in the indictment and proven by the testimony.

[6] It is assigned as error by the plaintiffs in error Hedderly and Hynes that the court permitted counsel for the prosecution to ask the

entryman, Bradford W. Dean, who had been called as a witness for the prosecution, the following question:

"Now, then, at the time you made this entry, in whose interest did you understand you were taking the claim, if anybody's but your own?"

The answer of the witness was as follows:

"A. At the time my understanding I was taking the claim in my own interest, or own benefit. There was no conversation with any one about it. That was my impression. my belief. at the time. When I had taken the claim, I realized then and knew that Mr. Kerr expected me, from what he said to others and myself, in talking, that he expected me to deed the claim over to the company as soon as I was able to do so, from the fact that they had advanced me the money that I was by honor obligated to them, and could not honorably sell to anybody else excepting the Pacific Furniture & Lumber Company, as they had advanced the money. Although at the time that he did advance the money he told me it was his own personal funds. But I learned later from different channels that it was not—that it was furnished by the company. He told me that the company wanted to take over or to get all the claims they could. They was in the market to buy up all those timber claims, and wanted the first right or chance to buy the claims. That is, from myself or anybody else that took claims they wanted —expected, where they furnished money, to have the first right to the claims or chance to buy them. That we were not supposed to sell outside without their consent. I would not have taken that claim at all if I had not had that conversation with Mr. Kerr. It was by reason of that conversation that I had with him that I went and took the claim."

The same witness on redirect examination was asked:

"State whether or not, Mr. Dean, you intended at the time you filed upon those lands to turn them over to the company, and whether or not the company understood that you were going to do so through Mr. Kerr?"

The witness answered:

"Yes; that is what the company understood from me through Mr. Kerr."

Similar questions were asked by the prosecution of A. J. Marsh, a witness called on behalf of the prosecution, and substantially the same answers were made by the witness.

These questions were of the same character as the question that was admitted over objection in the case of Van Gesner v. United States, 153 Fed. 56, 82 C. C. A. 180. In that case this court in passing upon the admissibility of such testimony said:

"All of such testimony was directly responsive to the allegations of the indictment, under which it was clearly competent for the prosecution to prove that the various entrymen swore falsely as to material matters stated in their preliminary applications for the land and in their final proof, and that the real intention of all the parties concerned was the obtaining of the government title to the land by means of such perjury for the benefit of Williamson & Co."

It was also considered and held to be admissible in the case of Williamson v. United States, 207 U. S. 425, 450, 28 Sup. Ct. 163, 172 (52 L. Ed. 278), where the Supreme Court said:

"The issue being the existence of a conspiracy to suborn various persons to commit perjury in relation to declarations to be made under the timber and stone act as to the purpose for which they desired to acquire land, etc., and as it is conceded that no formal contracts were executed between the alleged conspirators and the proposed entrymen, and the alleged understandings were of an ambiguous nature, and proof of the conspiracy depended upon a variety of circumstances, going to show the motive or intent, we

think it was proper to permit the interrogation of the entrymen concerning their understanding of the agreement with Van Gesner and their intention at the time when they made their preliminary declarations, as the question was relevant to the question of the nature and character of the dealings of the entrymen with the alleged conspirators, and bore on the question of the purpose or motive which influenced the making of the sworn statement required by law as a condition precedent to the acquirement of the land."

[7] It is next contended by all the plaintiffs in error that the evidence was not legally sufficient to warrant the conviction of the defendants. At the close of the evidence on the part of the prosecution, counsel for the defendants moved the court to instruct the jury to return a verdict of not guilty. This motion the court denied, to which exception was taken. This denial left it open to the court to consider whether there was any evidence to sustain the verdict though not to pass upon its weight or sufficiency. Wiborg v. United States, 163 U. S. 632, 658, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289.

[8] After verdict finding the defendants guilty, a motion was made for a new trial on the ground of the insufficiency of the evidence to justify the verdict. This motion was denied. The granting or refusal of such a motion was a matter of discretion in the court, and cannot be reviewed here. Freeborn v. Smith, 2 Wall. 160, 176, 17 L. Ed. 922; Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58; Lancaster v. Collins, 115 U. S. 222, 225, 6 Sup. Ct. 33, 29 L. Ed. 373; Crumpton v. United States, 138 U. S. 361, 363, 11 Sup. Ct. 355, 34 L. Ed. 958. We have no authority to inquire into the sufficiency of evidence to support a verdict. If there is any evidence, the issue of fact must be determined by the jury. It cannot be revised by the court.

[9] An examination of the record shows that there was evidence to support the verdict, not perhaps to the extent of showing such an active participation by the defendant Hedderly in the overt acts, as was the evidence against the defendants Smith and Hynes, but there was evidence against all three, and there was certainly evidence tending to show that the defendant Hedderly became aware of the fraudulent character of the business in which his associates were engaged in obtaining title to the public lands of the United States, and he did not withdraw from that business or repudiate their acts. This alone was sufficient to justify the jury in finding that he was a member of the conspiracy.

[10] The weight of the evidence and the extent to which it was contradicted or explained away by witnesses on behalf of the defendants were questions exclusively for the jury and not reviewable on writ of error. Crumpton v. United States, supra; Wilson v. Everett, 139 U. S. 616, 621, 11 Sup. Ct. 664, 35 L. Ed. 286; Ætna L. Ins. Co. v. Ward, 140 U. S. 76, 91, 11 Sup. Ct. 720, 35 L. Ed. 371; Moore v. United States, 150 U. S. 57, 61, 14 Sup. Ct. 26, 37 L. Ed. 996; Humes v. United States, 170 U. S. 210, 213, 18 Sup. Ct. 602, 42 L. Ed. 1011.

The case was clearly and fairly submitted to the jury and the issues of fact were passed upon by them.

Finding no error in the record, the judgment of the court below is affirmed.