LONABAUGH et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 18, 1910.)

No. 2,698.

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 150*)—CONSPIRACY—OVERT ACT—STATUTE OF LIMITATION.
    While under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), the gravamen of the offense is the conspiracy, there also must be an overt act to make the offense complete, and so the period of limitation within which it may be prosecuted must be computed from the date of the overt act, rather than the formation of the conspiracy. And where during the existence of the conspiracy there are successive overt acts, the period of limitation must be computed from the date of the last of them, of which there is appropriate allegation and proof.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 274, 275; Dec. Dig. § 150.*]

2. CONSPIRACY (§ 33*)—OVERT ACT—"OBJECT OF THE CONSPIRACY."
    Under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), making criminal a conspiracy "either to commit any offense against the United States or to defraud the United States in any manner or for any purpose" when one or more of the conspirators do some "act to effect the object of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

conspiracy," it is not enough that the conspiracy be directed to the attainment of some unlawful object, or to the attainment of some lawful object by unlawful means; it must be directed to the attainment of one of the objects specified. Nor is it enough that the overt act be directed to the attainment of another object; it must be directed to the attainment of the object which brings the conspiracy within the class made criminal; and when that object is attained "the object of the conspiracy," in the sense of the statute, is effected, and there cannot be a further overt act.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

8. PUBLIC LANDS (§ 114*)—PATENTS—WHEN TITLE PASSES—"PERFECT AND EFFECTIVE PATENT."

Under the public land laws of the United States, a patent becomes perfect and effective when it is executed and is recorded in the office of the recorder of the General Land Office at Washington, and no further act is essential to pass the title.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 314–322; Dec. Dig. § 114.*]

In Error to the District Court of the United States for the District of Wyoming.

Ellsworth E. Lonabaugh and others were convicted of conspiracy to defraud the United States, and they bring error. Reversed.

For opinion of lower court, see 158 Fed. 314.

John W. Lacey and John M. Waldron, for plaintiffs in error.

Timothy F. Burke, U. S. Atty., and Sylvester R. Rush, Special Asst. Atty. Gen.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. Ellsworth E. Lonabaugh, Robert McPhillamey, and E. M. Holbrook were tried and convicted in the district court upon an indictment, found April 3, 1907, wherein they were charged with having entered into a conspiracy to defraud the United States of the possession and title of certain of its public lands by means of fraudulent entries under the public land laws, and with having done certain acts to effect the object of the conspiracy.

Briefly stated the case made by the evidence, when interpreted most favorably for the government, was as follows: The defendants entered into the conspiracy on or before June 13, 1903. The fraud was to be effected by means of entries which were to be apparently regular, but actually fraudulent, in that they were to be secured by submitting to the local land office proofs falsely stating that the entrymen severally were making the entries solely for their own use and benefit, when in truth they were making them for the use and benefit of a corporation, and were obligated to convey the lands to it when the entries were secured; and the purpose in so falsifying the proofs was to induce the officers of the Land Department to allow the entries and to pass them to patent, neither of which lawfully could be done if the proofs disclosed the true facts. The entries actually were secured by the submission of false proofs as was contemplated; the entrymen, with

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a single exception, then executed and delivered to the corporation war-ranty deeds for the lands entered by them, and the remaining entryman then likewise conveyed the lands entered by him to an individual gran-tee designated by the defendants. Later the officers of the Land De-partment at Washington, acting upon the false proofs submitted when the entries were secured, issued to the entrymen patents for the lands (by which it is meant that the patents were duly signed, sealed, coun-tersigned, and recorded in the office of the recorder of the General Land Office at Washington); and still later the defendants, or some of them, sought and obtained a physical delivery of the patents, and then caused them and the deeds to the corporation to be recorded in the county clerk's office in the county where the lands are situate. And after the issuance of the patents the defendants or some of them also caused the title to the land which had been conveyed to an individual grantee, as before stated, to be passed to the corporation. But the dates of the several acts here recited were such that no overt act oc-curred within three years of the finding of the indictment, unless the issuance of the patents by the officers of the Land Department at Washington or some of the acts subsequently done by one or more of the defendants can be regarded as such an act.

At the conclusion of the evidence, the defendants severally requested the court to direct a verdict of acquittal upon the ground that the case made by the evidence was one the prosecution of which was bar-red by the statute of limitation. The request was denied for reasons indicated in United States v. Lonabaugh (D. C.) 158 Fed. 314, excep-tions were reserved, and the ruling is now assigned as error.

The statute defining the offense is Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), which reads:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any pur-pose, and one or more of such parties do any act to effect the object of the con-spiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

And the statute of limitation is Rev. St. § 1044 (U. S. Comp. St. 1901, p. 725), which declares:

"No person shall be prosecuted, tried or punished for any offense, not capi-tal, except as provided in section one thousand and forty-six, unless the in-dictment is found, or the information is instituted, within three years next after such offense shall have been committed."

While the gravamen of the offense is the conspiracy, the terms of section 5440 are such that there also must be an overt act to make the offense complete (Hyde v. Shine, 199 U. S. 62, 76, 25 Sup. Ct. 760, 50 L. Ed. 90); and so the period of limitation must be computed from the date of the overt act rather than the formation of the conspiracy. And where during the existence of the conspiracy there are successive overt acts, the period of limitation must be computed from the date of the last of them of which there is appropriate allegation and proof, and this although some of the earlier acts may have occurred more than three years before the indictment was found. Lorenz v. United States, 24 App. D. C. 337, 387; s. c. 196 U. S. 640, 25 Sup. Ct. 796,

49 L. Ed. 631; Ware v. United States, 84 C. C. A. 503, 154 Fed. 577, 12 L. R. A. (N. S.) 1053; s. c. 207 U. S. 588, 28 Sup. Ct. 255, 52 L. Ed. 353; Jones v. United States, 89 C. C. A. 303, 162 Fed. 417, s. c. 212 U. S. 576, 29 Sup. Ct. 685, 53 L. Ed. 657.

Passing the question of their appropriate allegation in the indictment, we proceed to consider whether any of the acts shown to have occurred within the three years can be regarded as an overt act within the meaning of section 5440. But as a preliminary to so doing it should be observed that no act can be so regarded unless it was a positive rather than a passive one, was the act of one or more of the conspirators, and was done to effect the object of the conspiracy.

Of the issuance of the patents little need be said. It was not the act of one or more of the conspirators, but of the officers of the Land Department at Washington who were acting solely in behalf of the United States. And while it doubtless was induced by what the conspirators had done in giving to the entries a lawful appearance, when they really were fraudulent, the fact remains that all that was done by the conspirators in that connection occurred more than three years before the indictment was found.

The subsequent acts are not open to the same objection, for they were the acts of one or more of the conspirators. But were they done to effect the object of the conspiracy; that is, to defraud the United States of the possession and title? This depends upon whether or not that object had been effected before those acts were done. If it had, the answer must be in the negative, because of the obvious inconsistency in treating an object already effected as still requiring something to be done to effect it. As to the possession, it is enough to say that it passed from the United States when the entries were secured; and as to the right of possession, it is enough to say that it passed from the United States in a qualified sense when the entries were secured and passed unqualifiedly with the title. When, then, did the title pass from the United States? To this there can be but one answer, which is that given in United States v. Schurz, 102 U. S. 378, 26 L. Ed. 167. In that case the Secretary of the Interior, upon becoming satisfied that the grantee named in an undelivered patent was not entitled to the land purporting to be conveyed thereby, canceled the patent, but it was held that the title had passed to the grantee, and was not recalled by what was done, the court saying:

"The Constitution of the United States declares that Congress shall have power to dispose of and make all needful rules and regulations respecting the territory and other property belonging to the United States. Under this provision the sale of the public lands was placed by statute under the control of the Secretary of the Interior. To aid him in the performance of this duty, a bureau was created, at the head of which is the Commissioner of the General Land Office, with many subordinates. To them, as a special tribunal, Congress confided the execution of the laws which regulate the surveying, the selling and the general care of these lands.

"Congress has also enacted a system of laws by which rights to these lands may be acquired, and the title of the government conveyed to the citizen. * * *

"In the case before us it is said that the instrument called a patent, which purports in the name of the United States to convey to McBride the lands in controversy, is not effectual for that purpose for want of delivery. That

though signed, sealed, countersigned, and recorded, and then sent to the register of the land office at Salt Lake City for delivery to him, it never was so delivered, and has always remained under the control of the officers of the Land Department, and that the instrument is invalid as a deed of conveyance for want of delivery to the grantee.   *   *   *

"We are of opinion that when, upon the decision of the proper office that the citizen has become entitled to a patent for a portion of the public lands, such a patent made out in that office is signed by the President, sealed with the seal of the General Land Office, countersigned by the recorder of the land office, and duly recorded in the record book kept for that purpose, it becomes a solemn public act of the government of the United States, and needs no further delivery or other authentication to make it perfect and valid. In such case the title to the land conveyed passes by matter of record to the grantee, and the delivery which is required when a deed is made by a private individual is not necessary to give effect to the granting clause of the instrument.
*   *   *

"The mode of avoiding it, if voidable, is not by arbitrarily withholding it, but by judicial proceedings to set it aside, or correct it if only partially wrong. It was within the province of those officers to sell the land, and to decide to whom and for what price it should be sold; and when, in accordance with their decision, it was sold, the money paid for it, and the grant carried into effect by a duly executed patent, that instrument carried with it the title of the United States to the land.

"From the very nature of the functions performed by these officers, and from the fact that a transfer of the title from the United States to another owner follows their favorable action, it must result that at some stage or other of the proceedings their authority in the matter ceases.

"It is equally clear that this period is, at the latest, precisely when the last act in the series essential to the transfer of title has been performed. Whenever this takes place, the land has ceased to be the land of the government; or, to speak in technical language, the legal title has passed from the government and the power of these officers to deal with it has also passed away. The fact that the evidence of this transfer of title remains in the possession of the land officers cannot restore the title to the United States or defeat that of the grantee, any more than the burning up of a man's title deeds destroys his title.   *   *   *

"The acts of Congress provide for the record of all patents for land in an office, and in books, kept for that purpose. An officer, called the 'recorder,' is appointed to make and to keep these records. He is required to record every patent before it is issued, and to countersign the instrument to be delivered to the grantee. This, then, is the final record of the transaction—the legally prescribed act which completes what Blackstone calls 'title by record'; and, when this is done, the grantee is invested with that title."

Other decisions to the same effect are Bicknell v. Comstock, 113 U. S. 149, 151, 5 Sup. Ct. 399, 28 L. Ed. 962; Noble v. Union River Logging Co., 147 U. S. 165, 176, 13 Sup. Ct. 271, 37 L. Ed. 123; McCormick v. Aultman, 169 U. S. 606, 608, 18 Sup. Ct. 443, 42 L. Ed. 875.

And that there is no distinction in this respect between patents which are issued upon bona fide entries and those which are issued upon fraudulent entries is illustrated in Colorado Coal Co. v. United States, 123 U. S. 307, 313, 8 Sup. Ct. 131, 31 L. Ed. 182, where it was said:

"It is fully established by the evidence that there were in fact no actual settlements and improvements on any of the lands as falsely set out in the affidavits in support of the pre-emption claims and in the certificates issued thereon. This undoubtedly constituted a fraud upon the United States sufficient in equity as against the parties perpetrating it, or those claiming under them with notice of it, to justify the cancellation of the patents issued to them. But it was not such a fraud as prevents the passing of the legal title by the patents."

Applying these decisions to the present case, it is plain that the title passed from the United States when the patents were executed and were recorded in the office of the recorder of the General Land Office at Washington, and that neither a physical delivery of them nor any further act was essential to make them perfect or effective. And, recalling what has been said about the possession and the right of possession, we think it also is plain that the object of the conspiracy was effected when the title passed from the United States, and, therefore, that what was done thereafter was not done to effect that object.

But it is contended that the conspiracy was not limited to the defrauding of the United States of the lands but included the transfer of them to the corporation, and that until both of these things were done the object of the conspiracy was not effected. Passing the question of whether or not the indictment charges the object of the conspiracy so broadly, and treating the evidence as sufficient in that regard, we come at once to test the contention in the light of the statute. Section 5440 does not interdict all conspiracies, but only those whose object is "either to commit any offense against the United States or to defraud the United States in any manner or for any purpose," and then only when one or more of the conspirators do some "act to effect the object of the conspiracy." It is not enough that the conspiracy be directed to the attainment of some unlawful object, or to the attainment of some lawful object by unlawful means; it must be directed to the attainment of one of the objects specified. Nor is it enough that the overt act be directed to the attainment of some other object; it must be directed to the attainment of the object which brings the conspiracy within the interdiction; and when that object is attained "the object of the conspiracy," in the sense of the statute, is effected. In this view of the statute the contention must fail. The conspiracy came within the interdiction because it had for one of its objects the defrauding of the United States of certain of its public lands, and that object was effected when, as a result of the deceit practiced upon the officers of the land department, the lands were patented to entrymen who were not entitled to them considering the antecedent agreement or obligation in pursuance of which the entries were secured. See United States v. Keitel, 211 U. S. 370, 391, 29 Sup. Ct. 123, 53 L. Ed. 230.

It follows from what we have said that the case made by the evidence was one that was barred by the statute of limitation and that the request for a directed verdict of acquittal should have been granted.

The judgment therefore is reversed, with directions to set aside the verdict and to take such further proceedings as may be in conformity with law.

PHILIPS, District Judge, concurs in the result and in all of the opinion save the sentence which reads:

"And where during the existence of the conspiracy there are successive overt acts, the period of limitation must be computed from the date of the last of them of which there is appropriate allegation and proof, and this although some of the earlier acts may have occurred more than three years before the indictment was found."