## BAKER et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 29, 1921. Rehearing Denied December 5, 1921.)

No. 5530.

1. **Conspiracy ⊂═46—Evidence held competent to show overt act.**

Under an indictment under Cr. Code, § 37 (Comp. St. § 10201), for conspiracy to defraud the United States in respect to its trust duties toward members of certain Indian tribes by inducing the Secretary of the Interior by means of fraud and deceit to believe that certain Indian heirs were competent, and to cause the issuance to them of unrestricted patents for allotments held in trust, and by thereafter procuring conveyances of the lands from the patentees to defendants or others, the procuring of such conveyances after issuance of the patents *held* to constitute overt acts within the conspiracy charged, proof of which was competent.

2. **Conspiracy ⊂═46—Evidence held competent to prove conspiracy.**

Under an indictment for conspiracy, evidence of overt acts, though committed prior to the period of limitation, may be considered as bearing on the question of conspiracy.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Criminal prosecution by the United States against Ed Baker and another. Judgment of conviction, and defendants bring error. Affirmed.

John Embry, of Oklahoma City, Okl. (Seymour Foose, of Watonga, Okl., and Embry, Johnson & Kidd, of Oklahoma City, Okl., on the brief), for plaintiffs in error.

Herman S. Davis, Asst. U. S. Atty., of Oklahoma City, Okl. (Herbert M. Peck, U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before HOOK and STONE, Circuit Judges, and JOHNSON, District Judge.

HOOK, Circuit Judge. Ed Baker and Ernie Black were convicted and sentenced for conspiring to defraud the United States in respect of its trust duties to certain members of the Cheyenne and Arapahoe Tribes of Indians and their allotted lands in Blaine county, Okl. (Criminal Code, § 37 [Comp. St. § 10201]). They prosecute this writ of error.

According to its general policy with reference to tribal titles to Indian lands, the government adopted in the case of the Cheyennes and Arapahoes the familiar plan of individual allotments. As they were not regarded competent to be intrusted with complete title and control, it was provided as a protective but forward step towards ultimate, full emancipation that the government should hold the titles in trust for the allottees and their heirs for the period of 25 years. Afterwards the Secretary of the Interior was authorized by statute to issue patents in fee in individual cases in which he was satisfied that the Indians were competent and capable of managing their own affairs. Finally, the Secretary was generally given discretion to remove restrictions on the alienation of allotments of deceased Indians and to issue unrestricted patents to their heirs in fee. It was upon the above situation that the conspiracy charged was predicated.

In general outline the indictment alleged that the defrauding of the United States was to be accomplished by practicing deception upon the Commissioners of Indian Affairs and through him upon the Secretary of the Interior as to the competency and qualifications of certain incompetent Indian heirs and by procuring by those means the issue to them of patents in fee for the lands held in trust for them by the United States, and, that being done, by procuring from the patentees deeds of conveyance to the accused and other persons. The machinery of the deception was set forth in detail. It consisted of false claims, proofs, and reports as to the competency of the Indians and their ability to manage their own affairs and the submission of them to the government officials at Washington for their action. A local official at the Cantonment Agency, Okl., was indicted as a coconspirator, but was acquitted at the trial.

[1] The trial court excluded from the consideration of the jury all the overt acts that were not alleged to have been committed within the statutory period of limitation, that is, within three years prior to the indictment. Another was withdrawn for insufficiency of proof, and still another fell because it was alleged to have been committed by the local official who was acquitted. Upon this it is contended that no overt acts charged in the indictment were left except those of the procuring of deeds of conveyance from the Indians after the patents from the United States had been issued to them; that the object of the conspiracy, if there was one, was attained upon the issue of the patents by which the "absolute title" passed from the government and vested in the Indians; and that the procurement of a subsequent deed could not constitute an overt act, which was an element of the offense required by section 37 of the Criminal Code. See Lonabaugh v. United States, 179 Fed. 476, 103 C. C. A. 56. But the case at bar is distinguishable from that of Lonabaugh. The charge here is broader than that of a

conspiracy to defraud the United States by wrongfully obtaining patents of lands of the public domain. Here, it is that the defrauding was in impairing, obstructing, and defeating the lawful functions of the Department of the Interior in respect of the possession, control, supervision, and management of the Indian lands. Those lands were held by the United States in trust for the Indians. They were not subject to sale by them unless and until the Secretary of the Interior acting according to law had caused patents in fee to be issued to them. If the action of the Secretary was induced by fraud and deceit as is charged, the trust obligation survived the issue of the patents. It did not end. The government still had sufficient interest, and it was its duty to recover the title and restore the lands to the trust estate. United States v. Debell, 227 Fed. 760, 142 C. C. A. 284. This it could do if the title had not in the meantime passed into the hands of an innocent purchaser. The right of the government as trustee was not limited to an action for the value of the land or for damages. If it were otherwise, a conversion of the trust land into a cause of action for money could be accomplished by fraud and deception practiced upon the trustee. It is obvious therefore that the procuring of deeds of conveyance from the Indians named in the indictment after the patents had been issued to them constituted overt acts within the scope and purpose of the conspiracy charged.

[2] Complaint is also made that although the trial court excluded from the consideration of the jury a number of alleged overt acts because they were committed prior to the period of limitation, it yet submitted the evidence regarding them as bearing on the question of conspiracy. There was no error in this. Under the statute defining the offense of the accused there are two essential elements: First a conspiracy to defraud; and, second, the commission of an overt act. Proof of a conspiracy may and generally does consist of a multitude of facts and circumstances regardless of whether singly considered they would constitute overt acts or not, and regardless of the time of their occurrence, provided it is shown that the conspiracy continued and was still afoot within the period of limitation. That is the case here.

There are other less important contentions. We have examined them and are of opinion that they are without merit. There was substantial proof of the guilt of the accused. The fraud and deception practiced upon the government officials were amply shown. The Indians were clearly incapable of managing their own affairs, though the contrary was made to appear. Most of them were of very advanced age, lived in tents, and belonged to the class known as "blanket Indians." And there was also proof that the consideration paid them for their conveyances was in some instances grossly inadequate.

The sentences are affirmed.

The above disposition of this case was determined by the three judges sitting, and the above opinion concurred in by Judge STONE before the death of Judge HOOK. It is also concurred in by Judge JOHNSON.