## HOOD et al. v. UNITED STATES.*

Circuit Court of Appeals, Eighth Circuit.
December 17, 1927.

No. 7553.

**1. Indictment and information ⬤�ません71—Indictment for unlawful drug transactions, in each count setting out nature and elements of offense and law violated, held not demurrable for vagueness and indefiniteness.**

Where each count of indictment, charging unlawful transactions in morphine hydrochloride and conspiracy in respect thereto, set out with particularity the nature of the offense charged, the provision of law claimed to be violated, and all the elements necessary to constitute the offense, indictment was not demurrable for vagueness and indefiniteness.

**2. Conspiracy ⬤➡43(6)—Indictment charging conspiracy to engage in transactions involving morphine known to have been unlawfully imported held sufficient (Narcotic Drugs Import and Export Act, § 1, amending Act Feb. 9, 1909, § 2, as amended [21 USCA §§ 173, 174]).**

Count of indictment charging that defendants conspired to receive, conceal, buy, sell, and facilitate transportation, concealment, and sale of morphine hydrochloride unlawfully imported into the United States with knowledge of such unlawful importation, in violation of Narcotic Drugs Import and Export Act, § 1, amending Act, Feb. 9, 1909, § 2, as amended (21 USCA §§ 173, 174), held sufficient as against objection that it failed directly to allege that the drugs were to be unlawfully imported.

**3. Indictment and information ⬤➡121(1)—Matters not involving essential element of crime charged may be supplied by bill of particulars.**

Matters not involving an essential element of the crime charged in the indictment may be supplied by bill of particulars.

**4. Indictment and information ⬤➡129(1)—Charges relating to conspiracy respecting transactions in morphine held to charge felonies, and properly joined in one indictment (Act Dec. 17, 1914, as amended [26 USCA §§ 211, 691, et seq.]; Cr. Code, § 335 [18 USCA § 541]).**

Counts of indictment charging conspiracy respecting transactions in morphine hydrochloride known to have been unlawfully imported into United States, the sale of such drug, conspiracy to deal in and sell morphine in violation of Act Dec. 17, 1914, as amended (26 USCA §§ 211, 691, et seq.; Comp. St. § 6287g et seq.), without having registered and paid the special tax required of dealers, and the sale of such morphine without having registered and paid required tax, held to charge felonies, within Criminal Code, § 335 (18 USCA § 541), and were properly joined in same indictment.

**5. Criminal law ⬤➡665(1)—Demand for exclusion of witnesses from courtroom while not testifying was addressed to trial court's sound discretion.**

Defendants' demand for exclusion of witnesses from the courtroom while not testifying

in criminal case held matter within sound discretion of trial court.

**6. Criminal law ⬤➡637—Trial court had discretion to commit defendant to marshal's custody for absenting himself from courtroom during trial.**

Trial court had discretion to commit defendant to custody of the marshal, because defendant had absented himself from courtroom during progress of the trial.

**7. Criminal law ⬤➡369(2)—Joint actions of defendants, preceding dates set out in indictment, held competent to show their association, and as bearing on existence of conspiracy, notwithstanding incidental disclosure of another offense.**

Under indictment charging substantive offenses involving sales and other transactions in narcotic drugs, and conspiracy to commit such offenses, testimony as to joint acts of defendants during summer preceding dates laid in indictment, in course of which sales were made to witnesses or in their presence, held competent to show their association, and as bearing on existence of conspiracy, notwithstanding the incidental disclosure thereby of an offense not alleged in indictment.

**8. Indictment and information ⬤➡176—Recital of indictment that conspiracy existed between certain dates held not to limit prosecution to events transpiring between those dates.**

That indictment charging conspiracy recited that conspiracy was continually in existence between the dates of November 1, 1925, and January 5, 1926, held not to confine prosecution to introducing testimony to events transpiring between such dates, if the activities of defendants for a preceding period reasonably proximate shed light on and tended to establish conspiracy as laid.

**9. Criminal law ⬤➡351(8)—Testimony respecting kidnapping of government's witness held not incompetent, because last overt act charged in conspiracy indictment had occurred previously on same day.**

Testimony that government's witness and another woman were kidnapped, and on following day were compelled by defendants' threats and duress to execute affidavits exonerating defendants from charges of conspiracy relating to unlawful transactions in narcotic drugs, was not rendered incompetent because the sale of morphine on same day as kidnapping, and charged in indictment as the last overt act, occurred before the kidnapping, since law does not deal strictly with hours and minutes of same day.

**10. Criminal law ⬤➡368(3)—Testimony of government's witness as to abduction occurring on last day of conspiracy charged, and execution of affidavits set up as defense for impeachment purposes, held admissible as res gestæ.**

Where indictment charged that conspiracy involving unlawful transactions in narcotic drugs continued to specified date, affidavits made on such date after last overt act charged in indictment, by government's witness, who had been kidnapped and compelled by threats and duress to execute the affidavits used by defense for purposes of impeachment, held so intimately

---

*Rehearing denied February 17, 1928.

a part of the res gestæ that evidence respecting the abduction, and execution of affidavits, was admissible.

**11. Criminal law ⊂⊃901—Error could not be predicated on orders overruling demurrers to evidence, where defendants thereafter proceeded with their defense.**

Where defendants proceeded with their defense after their demurrers to the evidence had been overruled, error could not be predicated on court's action in overruling demurrers.

**12. Criminal law ⊂⊃829(1)—Refusal of requested instructions respecting matters covered by court's charge was not error.**

Refusal of requested instructions on matters fully covered by correct charge of court was not error.

**13. Criminal law ⊂⊃814(17)—In prosecution for selling morphine hydrochloride without registering or payment of special tax, instruction that evidence was entirely circumstantial held properly refused (Act Dec. 17, 1914, § 1, as amended [26 USCA §§ 211, 691, et seq.]).**

In prosecution for unlawful sale of morphine hydrochloride without having registered or paid required tax, under Act Dec. 17, 1914, § 1, as amended (26 USCA §§ 211, 691, et seq.; Comp. St. § 6287g), instruction that evidence as to such count was entirely circumstantial *held* properly refused.

**14. Poisons ⊂⊃9—In absence of proof that defendants were dealers in morphine required to register and pay tax, conviction for violation of statute could not be sustained (Act Dec. 17, 1914, § 1, as amended [26 USCA §§ 211, 691, et seq.]).**

Under indictment charging conspiracy to deal in, and also the sale of, morphine hydrochloride, in violation of Act Dec. 17, 1914, § 1, as amended (26 USCA §§ 211, 691, et seq.; Comp. St. § 6287g), without registering or paying required tax, it was an essential element of the offense that defendants were dealers in morphine and required to register and pay the special tax, and in absence of such proof conviction could not be sustained.

**15. Poisons ⊂⊃9—Unexplained possession of morphine hydrochloride held to present jury question as to defendants' guilt of dealing in unlawfully imported narcotic drugs (Narcotic Drugs Import and Export Act, § 1 [amending Act Feb. 9, 1909, § 2, as amended] pars. [b], [f]; 21 USCA §§ 173, 174).**

Under Narcotic Drugs Import and Export Act, § 1 (amending Act Feb. 9, 1909, § 2, as amended), pars. (b) and (f), being 21 USCA §§ 173, 174, declaring it to be unlawful to import or bring any narcotic drug into the United States, defendants' unexplained possession of morphine hydrochloride *held* to present question for jury as to their guilt of receiving, concealing, buying, selling, and facilitating the transportation, concealment, and sale of narcotic drugs unlawfully imported, and their knowledge of such importation.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Jack Hood and others were convicted of conspiring to deal in and transport narcotic drugs, and of the substantive crimes of dealing in such drugs, and they bring error. Affirmed in part, and reversed and remanded in part.

Warren K. Snyder, of Oklahoma City, Okl. (Edward C. Snyder, of Oklahoma City, Okl., on the brief), for plaintiffs in error.

Leslie E. Salter, Asst. U. S. Atty., of Oklahoma City, Okl. (Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and POLLOCK, District Judge.

VAN VALKENBURGH, Circuit Judge. January 12, 1926, an indictment was returned in the Western district of Oklahoma against plaintiffs in error, Jack Hood, John Hood, Ben Bowdry, and Frank Snyder. This indictment contained four counts. The first count charged a conspiracy to commit an offense against the United States, to wit, that of "receiving, concealing, buying, selling, and facilitating the transportation, concealment, and sale of narcotic drugs, to wit, morphine hydrochloride, which said morphine hydrochloride then and there had been imported into the United States from a foreign country contrary to law, the said defendants then and there knowing that the said morphine hydrochloride then and there had been so imported into the United States contrary to law." It was alleged that this conspiracy was continually in effect, between the dates of November 1, 1925, and January 5, 1926. Overt acts committed January 4, 1926, within the jurisdiction of the court, were alleged.

The second count charged a sale by the defendants to one A. L. Raithel of morphine hydrochloride, known by the defendants to have been imported contrary to law. The third count was for conspiracy to commit the offense of dealing in and selling a derivative of opium, to wit, morphine, in violation of the Act of December 17, 1914, as amended (26 USCA §§ 211, 691, et seq.; Comp. St. § 6287g et seq.), without having registered and paid the special tax required by said act; it being alleged that the said defendants were then and there dealers in morphine, and persons required so to register and pay said special tax. Said conspiracy also was said to be continually in existence between the dates of November 1, 1925, and January 5, 1926. Overt acts were alleged to have been committed within the jurisdiction of the court on January 4, 1926.

The fourth count charged these defendants as dealers and persons required to register and pay the special tax under the Act of December 17, 1914, as amended, with a sale of morphine hydrochloride to one A. L. Raithel on January 4, 1926, without having registered and paid the tax required.

The indictment was met by demurrers, and by motions to quash because of alleged entrapment. These were overruled. Defendants also moved to suppress evidence on the ground of entrapment; this was likewise overruled. Then followed objections to the consolidation of offenses in the indictment, a motion to sever and separately try these offenses, and finally to require the government to elect upon which of these it would proceed. These objections and motions were overruled, and the ensuing trial resulted in the conviction of all defendants upon counts 1, 3, and 4. At the close of the evidence defendants had presented motions for a directed verdict, and these motions were sustained as to count 2, and overruled as to the other counts.

On the first count all defendants were sentenced to pay a fine of $500, and to be imprisoned for a term of two years in the penitentiary. The same sentence was imposed on count 3; the terms of imprisonment on these two counts to run concurrently. On the fourth count a fine of $500 was assessed and imprisonment imposed for a period of five years, this term to begin at the expiration of the sentences imposed on counts 1 and 3.

By assignment the errors urged upon the attention of the court are:

(1) The overruling of the demurrers.

(2) The joinder of the conspiracy and substantive charges in the indictment.

(3) The denial of the application of defendants for the rule with reference to the exclusion of witnesses from the courtroom while not testifying.

(4) The order of the court in committing the defendant Bowdry to the custody of the marshal, because that defendant had absented himself from the courtroom during the progress of the trial.

(5) Permitting the witness Lillie Welborn to testify concerning a so-called kidnapping transaction by the defendants Bowdry and John Hood on the night of January 4, 1926, and failure to admonish the district attorney in his opening statement to make no reference thereto, and to acts not specifically set forth in the indictment.

(6) Overruling demurrer to the evidence at the close of the government's case.

(7) Admission of the testimony of the witness Pauline White as to prior acts by the defendants, and overruling a motion of defendants that a mistrial be declared and the jury discharged for that reason.

(8) Refusal to direct a verdict of acquittal.

(9) Refusal of instructions.

(10) Admission of incompetent testimony.

(11) Overruling motions for new trial and in arrest.

(12) Evidence insufficient to sustain the verdict.

We shall take up these specifications substantially in this order:

[1, 2] 1. The substance of the several counts of the indictment has been stated. The demurrer attacks all the counts for vagueness and indefiniteness. This point is without merit, since each count sets out with particularity the nature of the offense charged, the provision of law claimed to be violated, and all the elements necessary to constitute the offense. With respect to the first count, complaint is made that it fails directly to allege that the drugs were to be unlawfully imported. It is stated, however, that defendants were to engage in the activities described with knowledge that the importation had been unlawful. The statute provides that it is unlawful to import or bring into the United States the narcotic drug described in this count. Indictments in this form have been held generally to be sufficient. Wong Lung Sing v. United States (C. C. A. 9) 3 F. (2d) 780; Proffitt v. United States (C. C. A. 9) 264 F. 299; Miller v. United States (C. C. A. 6) 300 F. 529; Goldberg v. United States (C. C. A. 8) 277 F. 211.

In the case last cited, Judge Sanborn, speaking for this court, points out that "it is not necessary, in an indictment for a conspiracy to commit an offense, to allege the facts constituting the offense which is the object of the conspiracy with the particularity requisite in an indictment for the commission of that offense." It was held that: "The true test of the sufficiency of an indictment is that it sets forth the facts which the pleader claims constitute the alleged transgression so distinctly as to advise the accused of the charge which he has to meet and give him a fair opportunity to prepare his defense, so particularly as to enable him to avail himself of a conviction or acquittal in defense of another prosecution for the same offense, and so clearly that the court may be able to determine whether the facts there stated are sufficient to support a conviction."

[3] Matters not involving an essential ele-

ment of the crime may be supplied by bill of particulars. Miller v. United States, supra. It is our judgment that the demurrers to the indictment were properly overruled.

[4] 2. Section 335 of the Criminal Code (18 USCA § 541) provides that:

"All offenses which may be punished by death, or imprisonment for a term exceeding one year, shall be deemed felonies. All other offenses shall be deemed misdemeanors."

Each count of this indictment charges a felony. The offenses, therefore, are of the same grade and were properly joined.

[5, 6] 3 and 4. The demand for the exclusion of witnesses and the committal of defendant Bowdry to the custody of the marshal were matters addressed to the sound discretion of the trial court, and we do not find that that discretion was abused.

[7] 5 and 7. These two specifications may be considered together. The first point raised is that the witnesses Lillie Welborn and Pauline White were permitted to testify to joint activities of the defendants during the summer preceding the dates laid in the indictment, in the course of which sales were made to these witnesses or in their presence. This evidence was competent for the purpose of showing the association of the defendants and their conduct of the same enterprise as bearing upon the existence of the conspiracy. Evidence competent for this purpose, or for any purpose germane to the case on trial, is not rendered incompetent because the existence of another offense not counted upon in the indictment is thereby incidentally disclosed. Renfro v. United States (C. C. A. 8) 15 F.(2d) 991.

The court carefully and repeatedly restricted this testimony to the purpose for which it was offered, and admonished the jury accordingly. The district attorney made this statement: "That evidence was not introduced here to tend to prove any specific sale of morphine as alleged in this indictment, but to show that even then they were working and conspiring together."

In the course of the discussion attending the admission of this testimony the court made the following announcements: "Of course, some prior transaction cannot be used as tending to show those charged in the indictment. The jury will understand that. * * * I think it is competent to show these parties were associating together. There is a primary rule that an offense not charged may not be shown as tending to show the one for which the trial is being had, yet there is another rule if that offense tends to show, and

is so connected with the case that is being tried as to throw light on it then it may be shown. * * * The jury will understand that the commission of one offense cannot be proved as likely to show that for which the trial is taking place. It is not permissible for any such purpose."

[8] But counsel urge that the testimony is incompetent for the further reason that the indictment limits the conspiracy to the period between November 1, 1925, and January 5, 1926, and that the inquiry cannot go back of the first of these dates. The indictment does say that "said conspiracy was continually in existence between the dates of November 1, 1925, and January 5, 1926"; but this does not confine the prosecution to events transpiring between these dates, provided the activities of the defendants, for an antecedent period reasonably proximate, shed light upon and tend to establish the conspiracy as laid. The testimony tends convincingly to show that these identical conspiracies existed and were in active operation long prior to the dates charged in the indictment. Heike v. United States, 227 U. S. 131, 33 S. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128; Wood v. United States, 16 Pet. 358, 10 L. Ed. 987; Baker v. United States (C. C. A. 8) 276 F. 283; Jelke v. United States (C. C. A. 7) 255 F. 264; Bradford et al. v. United States (C. C. A. 5) 152 F. 617.

[9, 10] The witness Lillie Welborn testified that, on the evening of January 4, 1926, the defendants in effect kidnapped her and another woman, took them from Oklahoma City to Tulsa, in the same state, there kept them in confinement for about a week, and compelled them by threats and duress to execute, on January 5, 1926, affidavits exonerating defendants from these charges. Defendants at the trial introduced the Welborn affidavit to impeach the testimony of that witness. The women were told that they were thus taken from Oklahoma City to Tulsa to prevent them from testifying before the grand jury about to assemble in the former city. It is contended that the sale to Raithel, constituting the last overt act alleged, by which the conspiracy was consummated, was made earlier in the evening and before the trip to Tulsa; that this evidence, therefore, was incompetent, as dealing with a matter subsequent to the consummation of the conspiracy. But the law does not deal thus strictly with hours and minutes of the same day. Besides, the conspiracy was in effect until the 5th, and the making on the latter date of the affidavits subsequently used by the defense for purposes of impeachment was, in connection

with the abduction of these witnesses for the purpose stated, so intimately a part of the res gestæ as to be admissible in any view. These specifications are without merit and are resolved against plaintiffs in error.

[11] 6. Inasmuch as plaintiffs in error proceeded with their defense after their demurrers to the evidence had been overruled, error cannot be predicated upon this action of the court.

[12, 13] 9. Exception is taken to the refusal of requests for instructions numbered 1 to 6, inclusive. Of these requests Nos. 2, 3, 4, and 6 were fully covered by the charge of the court either in exact language or in substance. Request No. 1 was given substantially, except the part which asked that the jury be instructed that the evidence as to count 4 was entirely circumstantial. That part was properly refused. Request No. 5 was upon the defense of entrapment. The court in its charge correctly stated the law governing that defense.

10. From the amended assignment of errors filed it appears that the alleged incompetent testimony admitted was that disposed of under specifications 5 and 7, supra. No other testimony has been brought to our attention as required by rule 11 of this court.

11. Error cannot be assigned to the overruling of a motion for new trial. In so far as the motion in arrest preserved the challenge to the sufficiency of the indictment, the point has been ruled under specifications 1 and 2, supra.

[14] 8 and 12. We come, finally, to the question of whether the evidence was sufficient to sustain the judgment, and whether the court erred in refusing to direct a verdict of acquittal. With respect to counts 3 and 4 we think the court erred. It was an essential element of the offense in both counts that defendants were dealers in morphine, and required to register and pay the special tax as such under the provisions of the first penal provision of section 1 of the act (26 USCA § 211, 691, et seq.; Comp. St. § 6287g). It is true that count 3 is for conspiracy, but the conspiracy charged was to violate this first penal provision of said section 1. There being no evidence that defendants were dealers within the restrictive definition of such contained in the act itself, we are constrained to

hold that in counts 3 and 4 the government failed to establish a material element of the offense charged. For the reasoning in support of this conclusion see O'Neill v. United States (C. C. A. 8) 19 F.(2d) 322, and Maupin et al. v. United States (C. C. A.) 23 F. 470, decided this day.

[15] Respecting the first count we have reached a different conclusion. This count is for the receiving, concealing, buying, selling, and facilitating the transportation, concealment, and sale of narcotic drugs, to wit, morphine hydrochloride, which had been imported into the United States from a foreign country, with knowledge on the part of plaintiffs in error that it had been unlawfully imported. Possession of such drugs by defendants was established. It was shown that at least one of the packages bore a Spanish label, the translation of which is "one ounce morphine hydrochloride, crystal, poison." Government witness Raithel testified that one of the defendants reassured him at the time of purchase as follows: "You needn't worry about it; it is good stuff. It comes from Mexico, and is real good stuff. * * * It costs us $48 an ounce in Mexico. It costs us to bring it up, and by the time we divided it four ways there isn't much in it."

By amendment of May 26, 1922, known as the Narcotic Drugs Import and Export Act (42 Stat. 596), paragraph (b) of section 2 (21 USCA § 173) declares "that it is unlawful to import or bring any narcotic drug into the United States or any territory under its control or jurisdiction" (with exceptions having no application here). Paragraph (f) of the same section (21 USCA § 174) provides that: "Whenever on trial for a violation of subdivision (c) the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains the possession to the satisfaction of the jury."

No explanation was vouchsafed. Every element of the offense charged in this first count was supported by the proofs, and its submission to the jury was fully warranted.

The result is that the judgment as to count 1 is affirmed; the judgments as to counts 3 and 4 are reversed and remanded for further proceedings. It is so ordered.